**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**MINT SOLAR, LLC**                                                     **PLAINTIFF**

**VS.**                         **NO. 5:19-cv-05167-TLB**

**SAM'S WEST, INC.**                                                    **DEFENDANT**

**MEMORANDUM REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

Sam's West, Inc. ("Sam's Club") advanced a straightforward argument in its opening brief—that the Member Professional Services Agreement (the "Agreement") between it and Mint Solar, LLC ("Mint") foreclosed on Mint's ability to recover the damages pleaded in the Complaint. In response, Mint offers a number of scattered arguments, from its reliance on extracontractual representations, to its interpretation of the Agreement's notice provisions, and, even, unconscionability. Those points are unpersuasive because the Agreement specifically bars (1) Mint's claim for $77 million in forecasted lost profits following an "anticipated expansion"; (2) Mint's claim for "several hundred thousand dollars" invested in resources for that expansion; and (3) Mint's claim for attorneys' fees, costs, and interest. Because the Complaint pleads no other forms of recoverable damage, the Court should grant the pending motion to dismiss.

## I.       REPLY ARGUMENT

The pending motion concerns only the pleadings, and Mint's Complaint identifies only three forms of damage caused by Sam's Club's alleged breach of the Agreement: (1) "forecasted net profits" which "exceed $77 million"; (2) an "invest[ment]" by Mint of "several hundred thousand dollars in preparing for the Rollout"; and (3) "interest, attorneys' fees and costs." *See* Dkt. No. 2, ¶¶ 19, 32, 37. The Agreement specifically addresses those damages, Dkt. No. 18-1, §§ 5.2, 5.3, 9.17, and also includes a provision that neuters Mint's reliance on extracontractual

representations and events. *See id.*, § 9.5. When read together, the Complaint and the Agreement leave no room for Mint to recover the lost profits, investments, and expenses Mint seeks. And, because Mint has identified no other form of recoverable damage, the Complaint should be dismissed with prejudice.

**A.      Mint cannot recover lost profits**

**1.      Mint has failed to plead recoverable lost profits**

In its response, Mint first argues that the Court should demur on the question of whether the lost profits it seeks are consequential in nature, framing that question as "an issue of fact." Dkt. No. 18, at 8. It is not. Sam's Club has challenged Mint's failure to plead recoverable damages, based on both the paucity of allegations in the Complaint and the plain language of the parties' Agreement. The Court may decide that issue on the pleadings.

Arkansas law obligates Mint to plead recoverable damages in order to state a claim for breach of contract. *See Clayton v. Batesville Casket Co., Inc.*, 2015 Ark. App. 361, at 7-8, 465 S.W.3d 441, 446 (affirming the Rule 12(b)(6) dismissal of a breach-of-contract claim in part due to the plaintiff's failure to allege damages). To survive dismissal on the pleadings, "there must be an allegation of sufficient facts to satisfy the damage element." *Wallis v. Ford Motor Co.*, 362 Ark. 317, 319, 208 S.W.3d 153, 155 (2005); *see also Erdman Co. v. Phoenix Land & Acquisition, LLC*, No. 2:10-CV-2045, 2013 WL 3776349, at *4 (W.D. Ark. July 17, 2013) (applying Arkansas law) ("A breach-of-contract action cannot survive without a damages allegation."). As set forth in Sam's Club's opening brief, the damages sought are not recoverable on the facts of this dispute. And, as this Court has recognized, the failure to allege facts that would support a plausible damages claim subjects the Complaint to dismissal under Rule 12(b)(6). *Bowman v. Prudential Ins. Co. of Am.*, 260 F. Supp. 3d 1072, 1082 (W.D. Ark. 2017)

(applying Arkansas law) (denying request for leave to amend because the plaintiff "set forth no facts to show a plausible claim for breach of contract that relie[d] only on a demand for consequential damages"). The Court need not wait to resolve the issue, as the Complaint and the Agreement—both of which are presently before the Court—provide all factual matters necessary for dismissal.

**2.** **The lost profits Mint seeks are not direct damages based on the plain language of Section 5.3 and the allegations pleaded in the Complaint**

Next, Mint claims that the lost profits it seeks are direct, rather than consequential, in nature.[1] Dkt. No. 18, at 10. In doing so, Mint ignores the great weight of Arkansas authority on the subject, pointing the Court to inapposite decisions involving different facts, different law, or both.

In Arkansas, "[l]ost profits are well recognized as a type of consequential damages." *Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 175, 217 S.W.3d 797, 803 (2005); *see also Arloe Designs, LLC v. Arkansas Capital Corp.*, 2014 Ark. 21, at 7, 431 S.W.3d 277, 282 (same); *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, at 15, 381 S.W.3d 46, 55 (same) *Spann v. Lovett & Co.*, 2012 Ark. App. 107, at 16, 389 S.W.3d 77, 91 (same). They are, therefore, recoverable, only if the lost profits "were fairly within the contemplation of the parties" at the time of contracting.[2] *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258, 987 S.W.2d 722, 728 (1999). That rule applies unless the plaintiff sufficiently alleges that the claimed lost profits "flow directly and immediately from a breach of a contract." *Boellner v. Clinical Study*

---

[1] Mint also argues that Section 5.3 operates only as a bar "on consequential damages, not lost profits per se." *See* Dkt. No. 18, at 9-10. The Court need not waste time on that argument because all damages-related allegations in the Complaint concern consequential damages, beyond the conclusory statement that Mint seeks "direct damages resulting from Sam's Club's breach of contract." Dkt. No. 2, at "PRAYER FOR RELIEF." The Court may disregard that legal conclusion for present purposes. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.").

[2] Tellingly, Mint does not even address the application of Arkansas's tacit-agreement rule in its response.

3

*Centers, LLC*, 2011 Ark. 83, at 14, 378 S.W.3d 745, 755.

In its response, Mint ignores those principles and instead offers a lengthy discussion of *Acker Construction, LLC v. Tran*, 2012 Ark. App. 214, 396 S.W.3d 279, which actually underscores the point raised by Sam's Club in its opening brief. In that case, the parties executed two contracts which provided that the defendant builder "would not be liable for any consequential damages as a result of *any defect in products or workmanship*" concerning the construction of seven chicken houses. *Id.* at 2, 396 S.W.3d at 283 (emphasis added). Construction was delayed, and the plaintiff property owner sued for the lost profits associated with the four chicken houses which were to be constructed before the remaining three. *Id.* at 3, 396 S.W.3d at 284. Importantly, the plaintiff alleged in the case that her predecessor in interest specifically told the builder that she would enter the construction contract *only* if the builder agreed to build the four chicken houses first so that she could "have birds in place and be drawing income while the other three chicken houses were being completed." *Id.* The builder allegedly failed to complete the work in a timely manner, so the allegation concerning the property owner's instruction at the time of contracting "demonstrated that the lost profits were the natural, proximate result of [the builder's] breach of its agreement to first build four houses before commencing work on the other three houses." *Id.* at 10-11, 396 S.W.3d at 288. The consequential-damages waiver concerning defects and workmanship thus did not apply to bar the direct, lost-profit damages, which were contemplated by the parties at the time of contracting.

The Complaint in the present case, however, includes no such allegation that Mint entered the Agreement with the expectation that it would one day solicit Sam's Club members in hundreds of stores following an aggressive expansion plan. Indeed, the Agreement does not address the Rollout whatsoever. The parties' deal gave Mint "the right to enter onto the

Specified Sam's [Club] Locations and solicit Sam's [Club] Members interested in purchasing Professional Services." Ex. 18-1, § 2.2. If a member was interested, Mint agreed to then "contact the interested Sam's [Club] Member . . . and offer to provide to any such . . . Member who meets Mint's eligibility requirements the products and services" sold by Mint. *Id.*, § 2.3. The Complaint's lost profits are wholly disconnected from the reality of the transaction. According to Mint, it would allegedly achieve those profits only if it (1) successfully rolled out the "Dual Intercept Model"; in (2) "216" Sam's Club locations; with (3) sales of "3.41 Solar Service . . . and 3.5 Home Security Service Sales per week per store"; over (4) a period of several months. *See* Dkt. No. 2, ¶¶ 31–32. Such damages from an "anticipated expansion," *see id.*, ¶ 23, do not "flow directly and immediately from" any alleged breach of the Agreement, which is silent as to those aggressive plans for future business. *Boellner*, 2011 Ark. 83, at 14, 378 S.W.3d at 755. Further, Mint has not alleged in the Complaint the parties had some understanding, like in *Acker Construction, LLC*, as to responsibility for potential lost profits (and the Agreement, in fact, forecloses on that possibility in Sections 5.3 and 9.17).[3] Simply put, Mint has not pleaded any allegations that would support its claim to the $77 million in lost profits referenced in the Complaint.

---

[3]The cases cited by Mint from federal district courts in Illinois and North Carolina are also unavailing. In the Illinois case, no information was provided as to the specific contract language at issue and, more importantly, what specific facts the plaintiff alleged in its complaint. *DP Serv., Inc. v. AM Int'l*, 508 F. Supp. 162, 167 (N.D. Ill. 1981). As such, it is questionable to suggest—as Mint does—that its "case is strikingly similar to cases[] like *DP Service, Inc.*" Dkt. No. 18, at 12. Similarly, in the North Carolina decision, the consequential-damages waiver did not specifically address lost profits, and the court's decision turned on its reading of the damages available under the Uniform Commercial Code as adopted in Indiana. *Biovail Pharm., Inc. v. Eli Lilly & Co.*, No. 5:01-CV-352-BO(3), 2003 WL 25901513, at *2 (E.D.N.C. Feb. 28, 2003). Recently, courts have criticized those two cases when presented with the overbroad argument that lost profits are recoverable direct damages. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 841 (10th Cir. 2016) (analyzing *Biovail Pharmaceuticals, Inc.* and other decisions and concluding that "[t]hese cases either lend support to our conclusion that the lost profits here are consequential damages or are simply not on point"); *see also Biotronik, A.G. v. Conor Medsystems Ireland, Ltd.*, 33 Misc. 3d 1219(A), 939 N.Y.S.2d 739 (Sup. Ct. 2011) (analyzing both *DP Service, Inc.* and *Biovail Pharmaceuticals, Inc.* and concluding that "[n]either of these federal district court decisions are persuasive authority").

### 3. Mint's unconscionability argument carries no weight whatsoever

Mint's final point on lost profits is a puzzling one. It claims that lost profits constitute "Mint's primary category of damages," and accordingly, the Court must deny the motion to dismiss on unconscionability grounds. Dkt. No. 18, at 14-15. In support of that argument, Mint cites Arkansas Code Annotated section 4-2-719(3) and *Caterpillar Tractor Co. v. Waterson*, 13 Ark. App. 77, 679 S.W.2d 814 (1984), for the proposition that unconscionability bars enforcement of the Agreement because "Sam's Club's preferred interpretation of the Agreement would leave Mint with no recourse whatsoever." *See id.* Though that argument impliedly concedes that Section 5.3 is, in fact, an enforceable provision (negotiated between two sophisticated actors) which bars Mint's claim for lost profits, the authority offered by Mint offers no basis for the claim to proceed.

Arkansas Code Annotated section 4-2-719(3) is a provision codified within Article 2 of the Uniform Commercial Code, as adopted by the General Assembly. *See* Ark. Code Ann. § 4-2-101 ("This chapter shall be known and may be cited as Uniform Commercial Code – Sales."). As a result, it reaches only "transactions in goods," Ark. Code Ann. § 4-2-102, defined by statute as "all things . . . which are moveable at the time of identification to the contract for sale." Ark. Code Ann. § 4-2-105. The Agreement did not involve "goods." Rather, the parties' obligations thereunder concerned certain "Professional Services." *See, e.g.*, Dkt. No. 18-1, § 2.1 ("Mint will be responsible for the Professional Services pursuant to the terms of this Agreement. . . ."); *see also id.*, § 2.2 (defining those "Professional Services"). Mint's reliance on Article 2 (and thus section 4-2-719(3)) is misplaced because that authority simply does not apply[4] to service contracts. *Ramthun v. Bryan Career Coll.-Inc.*, 93 F. Supp. 3d 1011, 1031 (W.D. Ark. 2015)

---

[4] Similarly, the *Caterpillar Tractor Co.* decision cited by Mint involved the sale of a bulldozer. *Caterpillar Tractor Co.*, 13 Ark. App. at 79, 679 S.W.2d at 816. The Court of Appeals appropriately applied Article 2 because that transaction involved a "good." *See id.* at 82, 679 S.W.2d at 818.

(applying Arkansas law). Accordingly, Mint's unconscionability argument cannot serve as a basis for the Court to deny the pending motion to dismiss.

**B. Mint cannot recover monies expended in reliance on "approvals" made by Sam's Club**

Next, Mint argues that its claim for alleged damages incurred in preparation for the Rollout is not subject to dismissal under Section 9.17 of the Agreement. Mint contends that Sam's Club reads that provision "more broadly than its language permits," and that Mint's damages claim relies upon the "explicit approval" of Sam's Club representatives. Dkt. No. 18, at 15-16. While Mint offers scant authority in support of its position, the argument nonetheless fails for three independent reasons.

First, Mint totally ignores the most critical language found in Section 9.17. The response focuses upon Mint's belief that its claim for "several hundred thousand dollars" "invested" to prepare for the Rollout is recoverable because "Sam's Club directed Mint to commence the Rollout." Dkt. No. 18, at 16. Thus, according to Mint, the investment was made "not in reliance upon promises of future business, but . . . [i]n reliance on the *Agreement* and *Sam's Club's authorizations*." *Id.* That argument does not pass muster because Section 9.17 specifically excludes claims for "investments" (the same word used in the Complaint) "made by Mint in reliance on any present or future business from Sam's Club pursuant to this Agreement." Dkt. No. 18-1, § 9.17. That language does not—as Mint suggests—reach only expected "future business." *See* Dkt. No. 18, at 16. It also prohibits the recovery of investments made in reliance upon "present" business, including the "present . . . business from Sam's Club pursuant to th[e] Agreement." Dkt. No. 18-1, § 9.17. That is exactly what Mint apparently seeks to recover in the Complaint—an "invest[ment]" of "several hundred thousand dollars in preparing for the Rollout." Dkt. No. 2, ¶ 19. Because Arkansas law requires that a court give effect to

contractually agreed remedies, *Conway Commercial Warehousing, LLC*, 2011 Ark. App. 51, at 7, 381 S.W.3d at 99, the Court should dismiss Mint's claim for damages made in reliance upon the Agreement.

Second, Mint's claim fails due to a pleading defect. The response includes scattered references to various extracontractual representations made by Sam's Club. Mint points to those "commitments" or "directives" regarding Sam's Club's "enthusiastic approval" as sufficient to state a plausible damages claim despite the plain language of Section 9.17. Dkt. No. 2, ¶ 17. Even if that were true, Mint has failed to plead its Complaint properly. Section 9.17 expressly states that "no person has authority to make any representations or promises of business to Mint on Sam's Club's behalf . . . or providing any present or future business to Mint, *except as may be contained in writing and signed by an officer of Sam's Club*." Dkt. No. 18-1, § 9.17 (emphasis added). The representations concerning the Rollout—upon which Mint purportedly relied—are *not* alleged to have been made in a signed writing executed by an officer of Sam's Club. Such a signed writing effectively serves as a condition precedent to Mint's alleged reliance. And, absent allegations that Mint received a signed writing in advance of its "invest[ment]," its ability to recover is barred. *See* Fed. R. Civ. P. 9(c).

Finally, the expectations, promises, or directives made which appear in the Complaint are of no moment when evaluating Mint's claim that it is entitled to expenses incurred to facilitate the Rollout. For example, Mint claims that Sam's Club "*directed* Mint to commence the Rollout" and "expressly approved specific programs consistent with the Agreement." Dkt. No. 18, at 16. But neither the "Dual Intercept Model" nor the Rollout were addressed in the Agreement. Under Section 9.5, any outside understandings are of no consequence because the "Agreement contains the entire agreement between the parties," and the Agreement would "be

8

amended only by a written letter executed on behalf of both parties." Dkt. No. 18-1, § 9.5. As such, Mint's reliance on various Rollout-related directives cannot serve as the basis for recovery because the Complaint does not allege that the Agreement was amended via a "written letter executed on behalf of both parties" as required by the Agreement.

## C.      Mint cannot recover attorneys' fees, costs, and interest

Finally, Mint offers an unpersuasive interpretation of Section 5.2 in hopes of saving its claim for attorneys' fees, costs, and interest. It argues that the provision's reference to "all" expenses—as opposed to "any" expenses—"suggests that *some* expenses are recoverable." Dkt. No. 18, at 17-18. That argument, if accepted, would mean that Mint's claim for 99% of its attorneys' fees may go forward, but a claim for 100% of those same fees could not. Arkansas law does not allow for such an absurd result.

The primary contract-interpretation rule is to give the parties' words the meaning that they intended them to have. *Singletary v. Singletary*, 2013 Ark. 506, at 10, 431 S.W.3d 234, 240-41. The Court must give the words their plain and ordinary meaning, and "[t]he best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Id.* When evaluating a contract, it "will not be so construed as to impose an absurd or impossible condition on either of the parties." *Eason v. Simon*, 180 Ark. 885, 23 S.W.2d 986, 987 (1930). Here, Section 5.2 plainly provides that the prevailing party "will not be entitled to recover all of its expenses incurred in collecting its claim, including reasonable attorneys' fees, costs and interest" in "recovering a claim against the other in a court of law." Dkt. No. 18-1, § 5.2. The phrase "[a]ll of its expenses" precedes specific forms of possible litigation-related expenses, "including reasonable attorneys' fees, costs and interest." *Id.* When

read in that straightforward manner, Section 5.2 unambiguously bars "all" forms of possible expenses incurred by the prevailing party in "recovering a claim against the other in a court of law." It does not, as Mint would hope, bar a recovery of the full (or 100%) *amount* of attorneys' fees, costs, and interest. To give effect to Mint's preferred interpretation would render Section 5.2 virtually meaningless (by shaving only a tiny portion off of a possible recovery) and undercut the Agreement's other provisions, such as its specific reference to "liability limitations" in Section 5.1. Arkansas law prohibits such an outcome. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 144, 147 S.W.3d 681, 686 (2004) (A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions.").

**D.      Mint is not entitled to leave for the purpose of amending its Complaint**

At the conclusion of its response, Mint tacitly concedes that it has failed to meet its pleading burden by requesting that the Court provide it with leave to file an Amended Complaint. Mint is not entitled to such relief. A plaintiff does not enjoy "an absolute or automatic right to amend," *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005), especially where the plaintiff fails "to describe the amendments he would submit" as required by local rules. *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822-23 (8th Cir. 2009). Here, Mint has not offered any details as to its proposed amendments. Moreover, it has not submitted a copy of an Amended Complaint as required by Local Rule 5.5(e), which states that "[a] party who moves to amend a pleading shall attach a copy of the amendment to the motion." Mint's non-compliance with that provision and the anticipated futility of its proposed amendment leaves the Court with no choice but to deny Mint's request for leave.

## II.     CONCLUSION

For the reasons set forth above, the Court should grant Sam's Club's motion to dismiss and dismiss the Complaint with prejudice.

This 6th day of November, 2019.

<div style="margin-left:40%">

Karen P. Freeman (Ark. Bar No. 2009094)
**MITCHELL, WILLIAMS, SELIG**
**GATES & WOODYARD, P.L.L.C.**
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas  72758
(479) 464-5650
kfreeman@mwlaw.com

**- AND -**

Graham Talley (Ark. Bar No. 2015159)
**MITCHELL, WILLIAMS, SELIG**
**GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
(501) 688-8800
gtalley@mwlaw.com

*Counsel for Defendant Sam's West, Inc.*

</div>