IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| MINT SOLAR, LLC | | PLAINTIFF |
| V. | CASE NO. 5:19-CV-05167 | |
| SAM'S WEST, INC. | | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss filed by Defendant Sam's West, Inc. ("Sam's Club") (Doc. 10) along with a Memorandum Brief in Support (Doc. 11). Plaintiff Mint Solar, LLC ("Mint") filed a Response (Doc. 18) and Sam's Club filed a Reply (Doc. 21). The issue is now ripe for decision. For the reasons discussed below, the Court **DENIES** Sam's Club's Motion to Dismiss (Doc. 10).

### I. BACKGROUND

The dispute arises out of the Membership Professional Services Agreement (the "Agreement") entered into by the parties on September 28, 2017. (Doc. 18-1). Pursuant to the Agreement, Mint was to be permitted to market its home security systems and residential rooftop solar panels to Sam's Club members by setting up informational booths inside Sam's Club stores. In its Complaint (Doc. 2), Mint describes the "dual intercept model," a plan developed during its partnership with Sam's Club to sell both solar services and home security services from the same booths and by the same individuals. Mint alleges that this plan received Sam's Club's "enthusiastic approval." (Doc. 2, ¶ 17). Initially, Mint tested the dual intercept model in twenty stores but had developed a plan with Sam's Club representatives to expand over time into 216 Sam's Club stores, which Mint terms the "Rollout."

1

Mint alleges, however, that its access to Sam's Club stores pursuant to the Agreement was interrupted several times. First, Mint was directed to withdraw in November 2017 while Sam's Club obtained necessary internal approvals. Mint reentered the stores in March 2018 but just one month later was directed to stop selling home security systems. Sam's Club asserted that Mint was authorized only to provide home solar services and not security systems. In June 2018, Mint was again directed to withdraw from Sam's Club stores after a negative video about Mint's partnership with Sam's Club was posted online by a former Mint employee and issues arose with Mint's solar installations. A meeting on June 22, 2018, appeared to resolve the conflict with Sam's Club, but in a subsequent phone call, Mint was directed not to reenter any stores. Finally, Mint received a formal termination letter from Sam's Club on August 30, 2018.

Mint brings a claim against Sam's Club for breach of the Agreement. Specifically, Mint points to Section 1.3 of the Agreement, which provides:

This Agreement may be terminated as follows:

> A. Either Party may terminate this Agreement at any time, with or without cause, upon ninety (90) days' written notice of said termination to the non-terminating Party.
>
> B. Either Party may terminate this Agreement upon the other Party's failure to cure a material breach or default, as defined herein, within thirty (30) days of receiving written notice of the same (the "Cure Period"). The Cure Period shall begin to run on the day notice is provided to the Party in breach or default consistent with the terms and conditions of this Agreement governing notice, identifying the deficiency complained of and relief sought. If the material default is not cured within the Cure Period, the non-breaching party may give notice of termination to the other Party, such termination being effective thirty (30) days from such notice (the "Transition Period"). During the Transition Period, the Parties agree to cooperate in good faith in transferring the services provided herein to another provider.

> C. Either Party may terminate this Agreement at the end of any Term by providing the other Party with written notice of termination within 30 days' prior to the end of the Term.

(Doc. 18-1, p. 2). Mint alleges that Sam's Club breached the Agreement by expelling Mint from Sam's Club stores without the required notice and prohibiting Mint from reentering the stores. Mint seeks damages for its lost profits resulting from Sam's Club expelling Mint without notice, its expenditures made in anticipation of the Rollout, and appropriate attorneys' fees, costs, and interest. In its Motion to Dismiss, Sam's Club argues that various provisions of the Agreement bar each form of relief sought by Mint and that Mint's Complaint therefore fails to state a claim for damages and should be dismissed.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition to the complaint's allegations, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller,

3

*Federal Practice and Procedure* § 1357 (3d ed. 2004)). For example, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

### III. DISCUSSION

Sam's Club argues that the Agreement bars Mint from seeking damages for lost profits as a result of Sam's Club's breach of contract. Section 5.3 of the Agreement contains this Limitation of Liability:

> (A) IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING, BUT NOT LIMITED TO LOST PROFITS, BUSINESS REVENUES, BUSINESS INTERRUPTION AND THE LIKE), ARISING FROM OR RELATING TO (i) THE RELATIONSHIP BETWEEN MINT AND SAM'S CLUB, INCLUDING ALL PRIOR DEALINGS AND AGREEMENTS, (ii) THE CONDUCT OF BUSINESS UNDER THIS AGREEMENT, (iii) BREACH OF THIS AGREEMENT, OR (iv) TERMINATION OF BUSINESS RELATIONS BETWEEN THE PARTIES, AND REGARDLESS OF WHETHER THE CLAIM UNDER WHICH SUCH DAMAGES ARE SOUGHT IS BASED UPON BREACH OF WARRANTY, BREACH OF CONTRACT,

> NEGLIGENCE, TORT, STRICT LIABILITY, STATUTE, REGULATION, OR
> ANY OTHER LEGAL THEORY OR LAW, EVEN IF SAM'S CLUB OR MINT
> HAS BEEN ADVISED BY THE OTHER PARTY OF THE POSSIBILITY OF
> SUCH DAMAGES.

(Doc. 18-1, p. 6). Mint responds that while this provision bars lost profits that would be considered *consequential* damages, it does not bar Mint from recovering lost profits that can be considered *direct* damages. If Section 5.3 of the Agreement does bar any damages resulting from lost profits, Mint argues in the alternative that such a provision is unconscionable and should not be enforced by the Court.

General damages are those that are proximately caused by the breach of contract. Consequential damages, in contrast, do "not flow directly and immediately from the act of the party, but only from some of the consequences or results" of the breach. *Dawson v. Temps Plus, Inc.*, 987 S.W.2d 722, 728 (Ark. 1999). Lost profits are frequently a form of consequential damages. However, where lost profits are "the natural and direct result of the breach" of a contract, courts have held that lost profits are a form of general damages. *Deck House, Inc. v. Link*, 249 S.W.3d 817, 825 (Ark. Ct. App. 2007). *See also Robertson v. Ceola*, 501 S.W.2d 764, 767 (Ark. 1973) (affirming an award for lost profits without determining whether they were within the contemplation of the parties as consequential damages where "loss of profits is naturally the proximate result of a breach of contract"). Mint alleges that if the termination of its sales relationship with Sam's Club had occurred according to the terms of the Agreement, Mint would have had up to ninety additional days of sales in Sam's Club stores, depending on the circumstances of the termination. Sam's Club's alleged breach of the Agreement in expelling Mint without notice could be considered the direct cause of the loss of profits Mint would have earned during such a period. Therefore, Mint has sufficiently alleged that its lost profits could be considered the

direct result of being expelled from Sam's Club stores without the notice period required by the termination clause.

Sam's Club also argues that the Agreement bars Mint's claim for its expenditures in anticipation of the Rollout. Section 9.17 of the Agreement declares:

> Except as otherwise agreed between the Parties, Sam's Club has no obligation to provide any minimum amount of business to Mint, and no person has authority to make any representations or promises of business to Mint on Sam's Club's behalf or about Sam's Club's intentions or expectations of renewing or extending this Agreement or providing any present or future business to Mint, except as may be contained in writing and signed by an officer of Sam's Club. Any expenditures, investments, or commitments made by Mint in reliance on any present or future business from Sam's Club pursuant to this Agreement are done at Mint's own risk and without any obligation whatsoever from Sam's Club.

(Doc. 18-1, p. 13). Sam's Club argues that Mint has not alleged that the Rollout was in writing and signed by an officer of Sam's Club. Mint responds that it relied not on representations of future business but on the termination provision in Section 1.3 of the Agreement.

Under the plain language of the Agreement, Mint is not entitled to any damages for expenses undertaken in reliance on representations that were not made in writing. There is no explicit discussion of the dual intercept model or specific reference to the Rollout contained in the Agreement, nor does Mint allege any other signed writing that lays out the details of the plan. However, Section 2.2 of the Agreement provides that "By means of displays, brochures, and on-site representatives at the Sam's locations specified in Schedule C ('Specified Sam's Locations'), . . . Mint shall have the right to enter onto the Specified Sam's Locations and solicit Sam's Members interested in purchasing Professional Services." (Doc. 18-1, p. 3). Mint's "Professional Services" are identified in the Agreement as both "Solar Energy Services" and "Home Security

6

Services." (Doc. 18-1, p. 1). Schedule C reiterates that "IT IS AGREED THAT MINT SOLAR WILL BE IN THE FOLLOWING SAM'S CLUB LOCATIONS FOR SOLAR ENERGY SERVICES AND/OR HOME SECURITY SERVICES" and lists 216 Sam's Club locations across the United States. (Doc. 18-1, pp. 31–39). Thus, Mint's Complaint, supported by the text of the contract, sufficiently alleges that it made expenditures in reliance on a written, signed commitment that it would be able to sell both solar panel and home security services in 216 Sam's Club locations and that the Agreement would not be terminated without notice.

Finally, Sam's Club asserts that the Agreement bars Mint's claim for attorneys' fees, costs, and interest. Section 5.2 provides the following with regard to Expenses and Attorneys' Fees:

> If a Party is successful in recovering a claim against the other in a court of law or arbitration proceeding, the recovering Party will not be entitled to recover *all* of its expenses incurred in collecting its claim, including reasonable attorneys' fees, costs and interest from the date of delivery or scheduled delivery of the shipment.

(Doc. 18-1, p. 6 (emphasis added)). Mint responds that, on its face, the provision bars recovery for "*all*" fees, costs, and interest, not "*any*" fees, costs, and interest. Further Mint argues that this provision is clearly written with a different situation in mind, given the reference to delivery dates, which is not relevant to the dispute between these parties. Sam's Club asks the Court to give the contract an interpretation other than that of its plain language by construing "all" to mean "any." Sam's Club argues that not doing so gives the provision an absurd result.

Parties may enter into fee-shifting arrangements, for example, that allow a prevailing party to recover its costs or provide that each party will bear its own costs. The

plain language of this provision appears to do something in the middle, barring a prevailing party's recovery of "all" expenses but not "any" expenses. This is not an inherently absurd result requiring the Court to create an alternate construction of the provision. Furthermore, principles of contract interpretation under Arkansas state law permit the Court to consider the "actual intent and conduct of the parties" in addition to "viewing the subject of the contract[] as the mass of mankind would view it." *Singletary v. Singletary*, 431 S.W.3d 234, 240 (Ark. 2013). Therefore, the Court does not find it appropriate to offer a definitive interpretation of the availability of attorneys' fees, costs, and interest at this juncture. Mint has requested, and the contract does not plainly foreclose, such relief. The Court will not rule at this time that Mint cannot recover any amount of attorneys' fees, costs, or interest.

## IV. CONCLUSION

Therefore, **IT IS ORDERED** that Sam's Club's Motion to Dismiss (Doc. 10) is **DENIED**.

**IT IS SO ORDERED** on this 22nd day of November, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE