# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**MINT SOLAR, LLC**

**PLAINTIFF &
COUNTER-DEFENDANT**

**VS.**  NO. 5:19-cv-05167-TLB

**SAM'S WEST, INC.**

**DEFENDANT &
COUNTER-PLAINTIFF**

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Sam's West, Inc. ("Sam's Club") respectfully submits this brief in support of its Motion for Summary Judgment (the "Motion").

### I.      INTRODUCTION

By the time Mint Solar, LLC ("Mint") informed Sam's Club of its operational and capital troubles, its business was crumbling. Mint was unable to staff its tables in clubs; it owed hundreds of thousands of dollars to multiple installers, vendors, and members; it was unable to pay its employees; it was failing to complete member projects; it had just sued its former chief sales officer for diverting sales leads and employees to a competitor; and it was insolvent, shopping its business to any potential buyer who would listen. When faced with the untenable situation created by Mint, Sam's Club had little choice but to cut ties, move on, and attempt to assist the members Mint had abandoned by virtue of its numerous breaches of the parties' contract. Unfortunately, it was too late to avoid some of the damage Mint created liens were placed on a number of Sam's Club's members' homes due to Mint's failure to pay its installers. In the end, Sam's Club was left to clean up ███████████████████████ In return, Mint filed this lawsuit, alleging Sam's Club somehow created the mess of Mint's own making.

There can be no doubt that Mint's insolvency and numerous operational shortcomings are serious and material breaches of the terms of the parties' agreement. Following those breaches by Mint, Sam's Club had no further obligations under established Arkansas law. As such, Sam's

Club in entitled to summary judgment on Mint's breach claim. However, should the Court deny Sam's Club's request for outright dismissal, Sam's Club requests the Court grant summary judgment on Mint's claim for lost profits, reliance damages, and attorneys' fees, all categories of damages that are expressly precluded by the terms of the parties' agreement.

## II.  <u>BACKGROUND</u>

The Member Professional Services Agreement (the "Agreement") between Sam's Club and Mint, which defined the parties' respective rights and responsibilities, became effective on ███████████████ and was executed by Mint's president and sole owner, Spencer Shumway. *See* Statement of Undisputed Material Facts ("SUMF"), ¶ 1; Ex. 1, at 1. At the time the Agreement was entered, Mint was engaged in the business of providing products and services in the solar energy and home security spaces, and pursuant to the terms of the Agreement, Mint could ████ ███████████████████████████████████████████████ ███████████████ SUMF ¶ 2; Ex. 1, at 3, § 2.2. Dkt. No. 2, ¶¶ 7, 9. Mint purchased all materials necessary for the provision of services under the Agreement from Knight West Construction, Inc. ("Knight West"), a company also led by Spencer Shumway. SUMF ¶ 3; Dkt. No. 2, ¶ 11.

### A.  The Agreement

In the Agreement, Mint agreed to ███████████████████████████ ███████████████████████████ SUMF ¶ 4; Ex. 1, at 4, § 2.7. All services provided by Mint were to ███████████████████████ *see id.* at p. 6, § 4.1, and Mint agreed to ███████████████████████ ███████████████████████████████████████ ███████████████ *See id.* at p. 12, § 9.14; SUMF ¶ 5. In the event Sam's Club ████████ ███████████████████████████████████████████

2

¶ 6; Ex. 1, at 7, § 7.1.

The Agreement also contains three critical provisions concerning damages. *First*, Section 5.3 includes a broad limitation on recoverable damages resulting from a breach:



Ex. 1, at 6, § 5.3(A); SUMF ¶ 7. *Second*, Section 9.17 of the Agreement precludes recovery of damages based on reliance on Sam's Club's alleged promises of future business.



Ex. 1, at 13, § 9.17; SUMF ¶ 8. *Third*, Section 5.2 addresses attorney's fees and costs in the event of a dispute regarding the Agreement.



Ex. 1, at 6, § 5.2; SUMF ¶ 9.

**B.      The Allegations**

Mint filed this lawsuit on August 29, 2019, asserting a single cause of action for breach of contract.  In the Complaint, Mint contends that Sam's Club "materially breached the Agreement by, among other things, expelling Mint from the [Sam's Club] Stores on several occasions without providing the notice period required by the Agreement and by prohibiting Mint from re-entering the Stores." Dkt. No. 2, ¶ 36. SUMF ¶ 10.  As a result, Mint claims (in the Complaint and its initial disclosures) that it is entitled to over ██████ in forecasted lost profit damages pertaining to solar and security sales from ████████████ SUMF ¶ 11; Ex. 2, ¶ III, Ex. A, B; Ex. 3.  Notably, Mint's expert report ████████████████████████ ████████████████████ SUMF ¶ 12; Ex. 4, at 31. In addition, Mint seeks to recoup its investment of "hundreds of thousands of dollars to create a dual intercept live display" and expenditures in preparing for its potential expansion into over 200 Sam's Club locations.  SUMF ¶ 11. Dkt. No. 2, ¶ 19. On top of its wildly speculative claim for damages, Mint seeks "on-going interest, attorneys' fees and costs." *Id.*, ¶ 37; SUMF ¶ 11.

**C.      The Facts**

In this case, it is undisputed that virtually all of Mint's claimed damages are premised on the successful implementation of an ambitious expansion plan referenced in the Complaint as the "Rollout."  Dkt. No. 2, ¶¶ 31-32, 35. SUMF ¶ 13.  Testimony and documents exchanged make

clear that Mint's rapid expansion from ███████████████████████████████████

███████████████████████████████ was all but impossible. To implement the Rollout, Mint

needed to increase (dramatically) the number stores in which it operated. *See* Ex. 5 at 89:10–24.[1]

Mint would ████████████████████████████████████████████████████████████

██████████████████████████. *See id.* SUMF ¶ 14. Additionally, ████████████████████

█████████████████████████ *see* Ex. 5, at 89:5–9, as the company ███████████████████

██████████████████████████████████████ Successful implementation

also depended on continued access to vendors and installers and sales volumes at rates far higher

than what Mint had realized over the █████████████████████████████ *Id.* at 90:11–91:9.

Mint's efforts on all of those fronts had proven unsuccessful. ████████████████████

███████████████████████████████████████████████ SUMF ¶ 15; Ex. 6

at No. 15. ████████████████████████████████████████████████████████████

████████████████████ SUMF ¶ 16; Ex. 7. ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ SUMF ¶ 17; Ex. 8.

Mint was also ████████████████████████████████████████ *See* Ex. 9;

SUMF ¶ 18. Later in ██████████████████████████████████████████████████

████████████████████████████████ SUMF ¶ 19; Ex. 10.

A ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████



---

[1] At the time of filing, only a rough draft copy of the Hoffman Dep. transcript was available. If the Court desires, Sam's Club will substitute pages from the final version as soon as it is available.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ SUMF ¶ 20; Ex. 11. By ████████████████████████ one of the companies which provided financing for members' purchases of solar systems, confirmed it ██████████████████████████████████████████████████

██████████████████████████████████ SUMF ¶ 21; Ex. 12. Mint alleges that on ████████████████████ during a regularly scheduled call with Mint, Sam's Club directed Mint to resolve the issue with its Work in Progress ("WIP") or withdraw from the clubs. SUMF ¶ 22. Dkt. No. 2, ¶ 25. However, documents produced in this matter tell a different story. In a ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

SUMF ¶ 23; Ex. 13.

Mint's ongoing operational missteps came to a head in a ████████████████ with Sam's Club. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ SUMF ¶ 24; Ex. 14, 84:18-84:25; 89:7-89:21. During the same meeting, ████████████████████████

██████████████████████████████████████████████████

████████████████████ and that Mint had filed a lawsuit against Savage and others in Utah. SUMF ¶ 25; Ex. 15. *See Mint Solar, LLC et al. v. Bart J. Savage et al.*, Case No. 2:18-cv-00569-TS-JCB (D. Utah); *Mint Solar, LLC and Knight West Const., Inc. v. Bart J. Savage et al,* No.

180400950 (Utah Cnty.). Shortly thereafter, on  ███████████████████ SUMF ¶ 26; Ex 14, at 131:3-131:18; Ex. 16.

According to a proposal from ███████████████████

████████████████████████████████████████

███████ SUMF ¶ 27; Ex. 17. Although Sam's ██████████████

████████████████████████████████████████

███████████████████ SUMF ¶ 28; Ex. 18, 30:21-31:21; Ex. 14,

114:1-21. Mint uses the ██████████████████████████

███████████ SUMF ¶ 29. *See, e.g.*, Ex. 4, at 5. Without ████████████

████████████████████████████████████████

███████████████████ SUMF ¶ 30; Ex. 18, 33:14-18; Ex. 19;

Ex. 20. Unfortunately, by the time Sam's Club was able to step in, ████████████

███████████████████████████ SUMF ¶ 31;

Ex. 21.

### III.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005). To successfully oppose a motion for summary judgment, the nonmoving party "must demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough." *Lambert v. City of Dumas*, 187 F.3d 931, 934-35 (8th Cir. 1999) (citations omitted). "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in [plaintiff's] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citations and quotation marks omitted). Courts must "look to the

7

substantive law to determine whether an element is essential to a case, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Wells Fargo Fin. Leasing, Inc. v. LMT Fette, Inc.,* 382 F.3d 852, 856 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. ARGUMENT

**1. Mint's prior material breaches excused Sam's Club performance of the Agreement.**

Mint cannot sustain a claim for breach of contract because its prior breaches of the Agreement excused Sam's Club's performance. As a general rule, the failure of one party to perform his contractual obligations releases the other party from his obligations. *Boellner v. Clinical Study Ctrs.,* LLC, 2011 Ark. 83, 378 S.W.3d 745 (2011). This general rule applies when the prior breach is "material and sufficiently serious" so as to excuse further performance. *TXO Prod. Corp. v. Page Farms, Inc.,* 287 Ark. 304, 698 S.W.2d 791, 793 (1985). "A material breach is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party." *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 21, 389 S.W.3d 77, 93 (2012). "An influential circumstance in determining whether a breach is material is the extent to which the injured party will obtain the substantial benefit that he reasonably anticipated." *Id.* Whether a prior breach is material may be a question of law for the Court, depending on the circumstances of the case. *Reece v. Bank of New York Mellon, Tr. for CIT Mortg. Loan Tr.* 2007-1, 381 F. Supp. 3d 1009, 1015–16 (E.D. Ark. 2019).

Section 1.4(B) of the Agreement addresses the circumstances considered a default and breach:



Ex. 1, at 2, § 1.4 (emphasis added).

**A.      Mint breached the Agreement before June 29, 2018 because it was insolvent.**

█████████████████████████████████████████████████████████████████

███████████████████████ Ex. 1, Agreement, at 2, § 1.4 (emphasis added). "Insolvency" is

not defined within the Agreement; however, Arkansas statutory law provides guidance, providing

that a debtor is "insolvent" if "the sum of the debtor's debts is greater than the sum of the debtor's

assets." Ark. Code Ann. § 4-59-202(a). In addition, the same statute provides that a debtor is

presumed insolvent if it is not paying debts as they become due. Ark. Code Ann. § 4-59-202(b).

Mint's expert defined "insolvency" the same way:



Ex. 5, 134:4-12.

It is ████████████████████████████████████████████

████████████████████████████. And by Mint's own admission, it was ████████████

9

████████████████████████████████████████████ *See* SUMF ¶ 30; Ex. 19, ¶ 9; Ex. 20.

Indeed, Mint had ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████. *See* SUMF ¶ 26; Ex. 16 ████████████████████

████████████████████████████████████████████████████████ Based on all of the

██████████████████████████████████████████████████



Ex. 14, 130:16–131:4. ████████████████████████████████████████████

██████████████████████████████████ *Reece,* 381 F. Supp. 3d at 1016 (applying

Arkansas law).  Accordingly, Sam's Club is entitled to summary judgment on Mint's breach-of-

contract claim.

**B.      Mint's failure to adequately perform under the terms of the Agreement excuses Sam's Club's performance.**

The Agreement required Mint to perform its work in accordance with certain operational

standards. Specifically, the Agreement outlines the following:



Mint failed to adhere to any of the provisions outlined above. In at least March 2018, if not earlier, Mint ████████████████████ SUMF ¶ 16; Ex. 7. By May 2018, Mint had ████████████

████████████████████████████████████████████

████████████████████████████████████████████

SUMF ¶¶ 19-20; Ex. 10; Ex. 11. Eventually, in ████████████████████████

████████████████████████████████████████████

████████████████

Ex. 18, 21:9–16.

As a result of Mint's operational failures, and ████████████████████

████████████████████████████████████████████

████████████████████████████████████. *Id.* at 20:12–21:1. On ████████

████████████████████████████████████████████

████████████████████████ SUMF ¶¶ 24-25; Ex. 14, 84:18-84:25; 89:7-89:21. In his deposition, ████████ effectively summarized the unfortunate position that Mint's failure to perform under the Agreement put Sam's Club in by late June 2018.



Ex. 18, 34:16-35:4 (emphasis added).  Without question, those failures by Mint to live up to its side of the bargain constitute material breaches of Sections 5.7, 2.10, 4.1, and 9.14 of the Agreement.  The cumulative effect was to "substantially defeat[] the purpose of the contract" for Sam's Club.  *Spann*, 2012 Ark. App. 107 at 21, 389 S.W.3d at 93.  As such, summary judgment on Mint's claim for breach of contract should be granted in Sam's Club's favor.

**C.**  **Mint's former employee's disclosure of confidential Sam's Club information to a competitor is a material breach of the Agreement and excuses Sam's Club's performance.**

Mint's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ company is a material breach of the Agreement.  Arkansas law, and the Agreement acknowledge the critical importance of holding confidential business information in confidence. *See e.g.*, Ark. Code Ann. §§ 4-75-601 *et seq.* (Arkansas Trade Secrets Act). Specifically, the Agreement includes the following provision regarding the protection of Sam's Club's confidential information.





Ex. 1, at 7, § 8.1.  Non-disclosure provisions such as the one included in the Agreement are enforceable under Arkansas law.  *See Freeman v. Brown Hiller, Inc.,* 102 Ark. App. 76, 84, 281 S.W.3d 749, 756 (2008) (affirming trial court's issuance of a preliminary injunction and enforcing a non-disclosure provision in favor of an employer).

Here, perhaps noticing the writing on the wall regarding Mint's financial situation, Savage and Halderman—both Mint executives—began plotting to create their own solar services company in December 2017.  All of this was well-known to Mint, as its owner and principal—Spencer Shumway—confirmed in a sworn declaration filed in Utah that Mint had breached its confidentiality obligations.  *See* Ex. 15. While still employed by Mint, Savage and Halderman formed Prizm Energy, LLC and Prizm Enterprises, LLC (the "Prizm Entities").  *Id.* at ¶¶ 3, 25. Thereafter, and until their termination in May 2018, Savage and Halderman diverted Mint's customers, sales representatives, customer leads, and contracts to the Prizm Entities. *Id.* at ¶¶ 25, 43-44, 47. Specifically, Savage and Halderman instructed Mint's sales representatives to cease inputting customer contact and lead information into Mint's system, and instead, to record the information manually and pass it on the Prizm entities for fulfillment. *Id.* at ¶ 32.

Ex. 1, at 7, § 8.1.  The Agreement plainly provides that

*Id.* (emphasis added).

violated

the plain language of Section 8.1. As recognized by the Arkansas Supreme court, '[t]he most important single asset of most businesses is their stock of customers." *Borden, Inc. v. Huey*, 261 Ark. 313, 316, 547 S.W.2d 760, 761 (1977). ██████████████ ████ is sufficiently serious to constitute a material breach of the Agreement, and Sam's Club owed no further obligations to Mint. *See QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at 5, 373 S.W.3d 318, 322.

**2.  Even if the Court finds that Sam's Club failed to comply with the Agreement's notice and cure provision, Mint's breaches were not curable, and compliance with the provisions was not required.**

In the Complaint, Mint argues that Sam's Club breached the Agreement by failing to give the required notice and opportunity to cure under the Agreement. Dkt. No. 2, ¶ 36. While the Arkansas Supreme Court does not appear to have yet addressed the issue (leaving this Court to make a prediction), the great weight of authority from other jurisdictions has held that a contracting party, when presented with an incurable breach, can terminate without notice or an opportunity to cure. *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009) ("When there is a breach of contract going directly to the essence of the contract…the non-breaching party may terminate the contract without notice."); *see also Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 278 (11th Cir. 1988) ("By letter... [defendant] itself expressly repudiated the subcontract. Once [defendant] itself had terminated the contract, a cure notice from [plaintiff] would have served no purpose."); *Olin Corp. v. Central Indus., Inc.*, 576 F.2d 642, 648 (5th Cir. 1978) (holding that under Mississippi law a termination provision in a contract "did not provide the exclusive means of termination in the event of a material breach which had the effect of substantially defeating the purpose of the contract"); *Larken, Inc. v. Larken Iowa City Ltd. P'ship*, 589 N.W.2d 700, 701-705 (Iowa 1998) (following *Olin Corp.* and recognizing that a provision providing an opportunity to cure is a cumulative remedy that does not supplant the ordinary right to terminate

14

(i.e., rescind) for a material breach). "[F]utility of curing a defect can defeat strict enforcement of a notice and cure clause." *Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 888 (Tex. App. 2015).

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 205 (2nd Cir. 2014) is instructive here. In *Giuffre Hyundai*, a car manufacturer terminated its agreement with a car dealer without notice. The dealership agreement contained a good behavior clause that allowed the manufacturer to terminate for criminal misconduct or deceptive trade practices. *Id.* at 206. Unbeknownst to the manufacturer, the New York attorney general brought a civil suit against the dealer, and a court found that the dealer was guilty of "fraudulent and illegal" practices, "deceptive acts," and "false advertising." *Id.* at 206. The car manufacturer learned of the judgment nearly a year later, then terminated the contract two months after that, citing the dealer's "material and incurable breach" of the dealership agreement. *Id.* at 211, n.4. The dealer sued, alleging that New York law entitled it to "notice of and an opportunity to cure its breach." *Giuffre Hyundai,* 756 F.3d at 207. The Second Circuit determined that New York common law would "not require strict compliance with a contractual notice and cure provision" where it would be "useless" or "futile." *Id.* at 209. A cure is not feasible in those situations because the parties' entire contractual relationship is undermined. *Id.* The court stated that when "parties agree to a notice and cure provision, it is reasonable to assume that they do so with the assumption" that it will apply only to "curable breaches." *Giuffre Hyundai,* 756 F.3d at 210. The court applied the same rationale to the statutory notice-and-cure requirement, holding that it is "patently unreasonable" to require one party to "endure an incurable breach in the service of an empty 'opportunity' to cure." *Id.*

The present case presents a similar situation involving Mint's claims over the Agreement's cure provision. Mint's material breaches were incurable. ███████████████████ ████████████████████████████████████████████████████ Ex. 18, 24:7-25:6; Ex.

14, 89:7-89:21. Critically, Mint's  ████████████████████

████████████████████████████████████████████

*Id. See* SUMF ¶ 30; Ex. 19, ¶ 9. Sam's Club had no contractual obligation to commit ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████—significant terms not included in the Agreement with Mint. *See* Ex. 17. Simply put, Mint had no chance of curing its breaches in a timely fashion, and a futile opportunity to cure would only have given Mint additional time to tarnish Sam's Club's reputation with its members.

**3.    Sam's Club is entitled to summary judgment on Mint's claim for lost profits, reliance damages, and attorney's fees.**

The express terms of the Agreement bar nearly all of the damages Mint seeks.  In the event that the Court does not grant Sam's Club's Motion for Summary Judgment, Sam's Club requests partial summary judgment on Mint's claim for lost profits, reliance damages, and attorneys' fees, costs, and interest.

**A.    Mint Cannot Recover Lost Profits.**

The lost profits sought in the Complaint are not available to Mint by virtue of Section 5.3(A) of the Agreement, which plainly prohibits a recovery of consequential damages like those allegedly sustained after Mint failed to implement the "Rollout."  *Second*, even if Mint had no contractual bar to recover the lost profits in question, Arkansas law disallows lost profits Mint claims would have been generated via the "Rollout."

a.    *Mint's lost profits are not recoverable under the express terms of Section 5.3.*

Under Arkansas law, "[p]arties to a contract are free to contract upon any terms not contrary to public policy or the terms of our statutes." *Pest Mgmt., Inc. v. Langer*, 369 Ark. 52, 60, 250

S.W.3d 550, 556 (2007). In addition, it is common for parties to "fashion their own remedies in the event of a breach." *Conway Commercial Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, 7, 381 S.W.3d 94, 99 (2011). Nearly a century of established Arkansas case law supports this principle. *Edwards v. Perdue*, 177 Ark. 241, 6 S.W.2d 20, 21 (1928) ("It is a settled principle of law that, when the parties themselves in a contract provide the remedy in case of default by either party, the remedy so provided is conclusive."). Mint expressly waived its right to seek lost profits the moment it signed the Agreement. The language of the Agreement could not be clearer on the issue. Specifically, Section 5.3 of the Agreement provides, in bold and capitalized letters:



Ex. 1, at 6, § 5.3(A). Such limitation-of-liability provisions are unambiguous, *see Erdman Co. v. Phoenix Land & Acquisition, LLC*, No. 2:10-CV-2045, 2013 WL 3776405, at *2 (W.D. Ark. July 17, 2013) (applying Arkansas law), so the Court should give effect to the plain and ordinary meaning of the provision as intended by the parties. *Pittman v. Pittman*, 84 Ark. App. 293, 298, 139 S.W.3d 134, 136 (2003). Thus, Section 5.3(A) bars all damages that do not "flow directly

and immediately from the act of the party, but only from some of the consequences or results of such act." *First Serv. Corp. v. Schumacher*, 16 Ark. App. 282, 286, 702 S.W.2d 412, 415 (1985); *see also Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 605, 864 S.W.2d 817, 825 (1993) ("Lost profits are well recognized as a type of consequential damages.").

The lion's share of Mint's ███████████████████ ███████████████████████████████████ Ex. 4, at 5. Prior to that time, Mint had operated ██████████████████████████████████ ████████████████████████████ *See id.* at 8. The company had made only ██ ███████████████████ Ex. 5, 184:19–22. Mint's forecasted lost profits are not based upon Mint's sales operations as they existed each and every day throughout the parties' relationship. Rather, in order to generate the lost profits at issue here, ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ Damages founded upon such assumptions do not "flow directly and immediately from" Sam's Club's alleged exclusion of Mint from the ██ stores it was in as of ████████████. All of those claimed lost profits are thus consequential in character. And as the Arkansas Court of Appeals has found, "[t]he parties here agreed on a remedy in the event of a breach, and we see no reason why they should not be bound to it." *Conway Commercial Warehousing, LLC*, 2011 Ark. App. 51, at 7, 381 S.W.3d at 99.



      b.     *Alternatively, lost profits are not recoverable under Arkansas law because Sam's Club did not tacitly agree to assume responsibility for lost profits.*

Even assuming that Mint could overcome the clear limiting language of Section 5.3 which precludes recovery of lost profits, Mint still cannot recover lost profits under Arkansas law. "Consequential damages are those damages that do not flow directly and immediately from the breach, but only from some of the consequences or results of the breach." *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 24, 280 S.W.3d 1, 10 (2008). Importantly, "[l]ost profits are well recognized as a type of consequential damages." *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 605, 864 S.W.2d 817, 825 (1993); *see also Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 175, 217 S.W.3d 797, 803 (2005); *Arloe Designs, LLC v. Arkansas Capital Corp.*, 2014 Ark. 21, at 7, 431 S.W.3d 277, 282 (same); *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, at 15, 381 S.W.3d 46, 55 (same) *Spann v. Lovett & Co.*, 2012 Ark. App. 107, at 16, 389 S.W.3d 77, 91 (same). As such, Arkansas's "tacit agreement" rule applies, pursuant to which "the plaintiff must prove more than the defendant's mere knowledge that a breach of the contract will entail special damages to the plaintiff; it must also appear that the defendant at least tacitly agreed to assume responsibility for such damages." *Hobson v. Entergy Arkansas*, Inc., 2014 Ark. App. 101, at 13, 432 S.W.3d 117, 126. The defendant must not only have knowledge of the special circumstances, but

> such knowledge "must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it." In other words, where there is no express contract to pay such special damages, the facts and circumstances in proof must be such as to make it reasonable for the judge or jury trying the case to believe that the party at the time of the contract tacitly consented to be bound to more than ordinary damages in case of default on his part.

*Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 177, 217 S.W.3d 797, 805 (2005) (quoting *C.D. Smith Motor Co.*, 353 Ark. 228, 241, 106 S.W.3d 425, 431-32 (2003) (citations omitted)).

19

The plain language of the Agreement forecloses any argument that Sam's Club somehow agreed to assume responsibility for lost profits. Turning again to Section 5.3, the parties expressly disclaimed any ████████████████████████████████████████████ ███████████████████████████ Ex. 1, at 6, § 5.3(A). Further, Mint has provided no evidence that the parties had an understanding as to responsibility for lost profits. In fact, the terms of Agreement contemplate a more arms length transaction, and merely ████████████ ████████████████████████████████████████████ ████████████████████████ Id. at p. 3, § 2.2. If a member was interested, Mint agreed to ████████████████████████████████████████████ ████████████████████████████ sold by Mint. Id. at p. 3, § 2.3. Sam's Club had no involvement in the actual transaction which forms the basis for Mint's outlandish "forecasted net profits" calculation. And, in fact, Sam's Club so stated in the Agreement:



Id. at p. 3, § 2.4. The cumulative effect of Section 5.3 coupled with the plain meaning of sections 2.2, 2.3, and 2.4 leads to but a single conclusion—Sam's did not tacitly agree to assume potential liability for lost profits.

      c.    *Mint's lost profits are too speculative to be recoverable under Arkansas law.*

Mint's forecasted lost profits are far too speculative and contingent upon too many variables to be recoverable under Arkansas law. To obtain an award of lost profits, Mint must

"show[] that it was reasonably certain the profits would have been made had [Sam's Club] carried out its contract." *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 312, 902 S.W.2d 760, 766 (1995). "Such proof is speculative *when based on projected sales if there are too many variables to make an accurate projection.*" *Greenway Equip., Inc. v. Johnson*, 2020 Ark. App. 336, at 11, 602 S.W.3d 142, 151. (emphasis added); *see also Bank of Am., N.A. v. C.D. Smith Motor Co.*, 353 Ark. 228, 247, 106 S.W.3d 425, 435 (2003) (same). Mint's forecasted lost profits are far from direct, and could more accurately be described as attenuated. In fact, Mint's forecasted lost profits are wholly disconnected from its operational reality. In truth, in █████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████ *See* Dkt. No. 2, ¶¶ 31–32. Those contingencies all also assume ████████████

████████████████████████████████████████

██████████ Such a scenario—particularly as presented by Mint's expert—presents far "too many variables to make an accurate projection," as required back Arkansas law. *K.C. Properties of N.W. Arkansas, Inc.*, 373 Ark. at 24, 280 S.W.3d at 10. *Greenway Equip., Inc.*, 2020 Ark. App. 336, at 11, 602 S.W.3d at 151. The damages are therefore not recoverable.

> **B.** **Mint cannot recover expenditures or investments made in reliance upon the Agreement or expectations of expansion.**

---

[2] Mint's expert report backs down from this number significantly, predicting only ███ average sales per day. Ex. __ Hoffman Rep. at 9.

Mint alleged damages also include a claim for ████████████████████

████████████████████████████████████████████

████████████████████ Ex. 22 , Mint's Resp. to Interrog. No. 12.  Such investments and

expenditures are expressly unrecoverable under the terms of the Agreement:



Ex. 1, at 13, § 9.17 (emphasis added).  Such a limitation provision is valid and enforceable under

Arkansas law. *See Conway Commercial Warehousing,* LLC, 2011 Ark. App. 51, at 7, 381 S.W.3d

at 99.

The plain language of 9.17 forecloses Mint's recovery of the exact reliance damages it

claims. Specifically, ████████████████████████

████████ SUMF ¶ 8; Ex. 1, at 13, § 9.17. Further, Mint has not alleged that its expectancies arise

from ████████████████████████████████ *Id.*  And most

importantly, according to the Agreement, ████████████████████

████████████████████████████████████████████

████████████████████████████████████ *Id.*

Binding Arkansas case law "requires that the Court "enforce the contract that [the parties] have

made." *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 219, 289 S.W.3d 466, 470 (2008).  As

a result, Sam's Club is entitled to summary judgment on Mint's claim for its investment and reliance damages.

### C. Mint cannot recover attorney's fees under the terms of the Agreement.

Mint's Complaint includes a demand for attorney's fees, costs, and interest. Dkt. No. 2, ¶ 37. Under Arkansas law, a contract provision concerning an award of attorneys' fees is enforceable "in accordance with its terms." *Griffin v. First Nat. Bank of Crossett*, 318 Ark. 848, 856, 888 S.W.2d 306, 311 (1994); *see also Marx Real Estate Investments, LLC v. Coloso*, 2011 Ark. App. 426, at 14, 384 S.W.3d 595, 603 ("Th[e] agreement was enforceable according to its terms independent of the statutory authorization for attorney's fees set forth in section 16-22-308."). The Agreement addresses attorneys' fees directly.



Ex. 1, at 6, § 5.2 (emphasis added); SUMF ¶ 9. The plain meaning of Section 5.2 bars recovery of attorneys' fees, costs, and interest. As such, summary judgment is appropriate on Mint's request for costs and fees is appropriate.

### V. CONCLUSION

The Court should grant the Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

Karen P. Freeman (Ark. Bar No. 2009094)
L. Kyle Heffley (Ark. Bar No. 96085)
**MITCHELL, WILLIAMS, SELIG**
**GATES & WOODYARD, P.L.L.C.**
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
(479) 464-5650
kfreeman@mwlaw.com
KHeffley@mwlaw.com

**-AND-**

Graham Talley (Ark. Bar No. 2015159)
**MITCHELL, WILLIAMS, SELIG
GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas  72201
(501) 688-8800
gtalley@mwlaw.com

*Counsel for Defendant Sam's West, Inc.*

24